## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRISTA L. McMAHON, | : | CIVIL NO: 1:20-cv-02038 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJIKAZI,[1] | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I.   Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and

1383(c)(3).  Plaintiff Trista McMahon seeks judicial review of the final decision of

the Commissioner of Social Security denying her social security benefits under

Titles II and XVI of the Social Security Act.  Because the Commissioner's

decision is supported by substantial evidence, we will affirm her decision.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II.   Background and Procedural History.

We refer to the administrative transcript provided by the Commissioner. *See docs. 15-1 to 15-8*.[2]  On January 16, 2018, McMahon filed an application for child's insurance benefits ("CIB"). *Admin Tr.* at 13.[3]  McMahon also protectively filed[4] a Title XVI application for Supplementary Security Income ("SSI") on December 15, 2017. *Id.*  Both claims alleged disability beginning on April 20, 2014. *Id.*  After McMahon's claims were initially denied, she requested a hearing. *Id.*  Administrative Law Judge Frank Barletta ("ALJ") held an administrative hearing on October 30, 2019, in Wilkes-Barre, Pennsylvania. *Id.*  McMahon and

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on McMahon's claims.

[3] CIB is payable to a child "of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual" in several circumstances. 42 U.S.C. § 402(d)(1)(B); *see also* 20 C.F.R. § 404.350(a).  Here, McMahon's application for CIB appears to be based on her father's status. *See Admin. Tr.* at 137.

[4] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16- CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, December 15, 2017, is the date identified by the ALJ as the date that McMahon protectively filed her application for SSI. *Admin. Tr.* at 13.

2

her husband appeared and testified at the hearing; an impartial vocational expert was also present and testified. *Id.*

On December 11, 2019, the ALJ determined that McMahon had not been disabled prior to November 29, 2015, the date she attained the age of 22,[5] as defined in § 223(d) of the Social Security Act, and he denied her CIB accordingly. *Id.* at 31.  Finding her not disabled under § 1614(a)(3)(A) of the Social Security Act, the ALJ also denied her application for SSI. *Id.*  McMahon appealed the ALJ's decision to the Appeals Council, which denied her request for review on August 31, 2020. *Id.* at 9.  This makes the ALJ's decision the final decision of the Commissioner, subject to judicial review by this court.

McMahon initiated this action on November 3, 2020, by filing a complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *See doc. 1.*  McMahon claims that the Commissioner's decision "was not supported by substantial evidence." *Id.* ¶ IV (15).  She also asserts the Commissioner's decision "is erroneous and contrary to settled law." *Id.* at ¶ IV (16).  In her prayer for relief, McMahon requests that this court reverse the administrative decision and award her CIB and SSI benefits, or remand this case to the Commissioner for a new

---

[5] One of the circumstances when an individual is entitled to CIB is when the individual is over 18 years of age and was disabled before she turned 22 years old. *See* 42 U.S.C. § 402(d)(1)(B), 20 C.F.R. § 404.350(a)(5).

3

hearing, or grant such further relief as the court deems to be justified. *Id.* ¶ V (1)–(3).

The Commissioner filed an answer and the administrative transcript on May 17, 2021. *See docs. 14, 15.* The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 18.* McMahon filed her brief in support of her complaint on October 27, 2021. *See doc. 19.* Defendant filed its brief in opposition on November 16, 2021. *Doc. 20.* Thus, the parties have filed their respective briefs, and this matter is ripe for decision.

## III.   Legal Standards.

### A. Substantial Evidence Review—The Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether McMahon is disabled, but whether substantial evidence supports the Commissioner's findings that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title II[6] or Title XVI of the Social Security Act, a claimant must generally be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this

---

[6] CIB falls under Title II of the Social Security Act.  And the same definition of disability that applies to disability insurance benefits applies to CIB.  *See* 20 C.F.R. § 404.1505(a) ("We will use this definition of disability if you are applying for a period of disability, or disability insurance benefits as a disabled worker, or child's insurance benefits based on disability before age 22 . . . .").  Further, the same rules, including the same five-step sequential evaluation process, that apply to disability insurance benefits apply to CIB. *See* 20 C.F.R. § 404.1520(a)(2) ("Theses rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability.").

process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1520(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1520(a)(1), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

7

national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requirements.  Most significantly, the ALJ must provide "a clear and satisfactory" explanation of the basis on which their decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.    The ALJ's Decision Denying McMahon's Claim.

The ALJ determined that McMahon was not disabled as defined in § 223(d) of the Social Security Act from her alleged onset date, April 20, 2014, through November 29, 2015, when she reached age 22. *Admin. Tr.* at 14, 31.  Additionally, the ALJ found that McMahon was not disabled under § 1614(a)(3)(A) of the Social Security Act. *Id.* at 31.

The ALJ evaluated McMahon's claim at each step of the sequential evaluation process. *Admin. Tr.* at 15–27.  Before beginning the five-step analysis, the ALJ found that McMahon was born on November 30, 1993, and that she had not reached the age of 22 as of April 20, 2014, the alleged onset date. *Id.* at 15.  At step one of the sequential-evaluation process, the ALJ found that McMahon had not been engaged in substantial gainful activity since the alleged onset date. *Id.*

At step two, the ALJ found that McMahon had severe impairments consisting of "generalized anxiety disorder, depressive disorder, bipolar I disorder, attention deficit hyperactivity disorder (ADHD), learning disorder, and mild intellectual disorder." *Id.* at 16.  The ALJ further found that these medically determinable impairments significantly limited McMahon's ability to perform basic work activities. *Id.*

At step three of the sequential-evaluation process, the ALJ found that McMahon did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*  As relevant to this case, the ALJ found that McMahon did not satisfy the requirements of listing 12.05 because her adaptive functioning was not at the extreme level of limitation required in one area listed in listing 12.05 paragraph B, or alternatively at a marked limitation in two of paragraph B's areas. *Id.* at 20.

In this regard, the ALJ determined that McMahon had a moderate limitation in "understanding, remembering, or applying information." *Id.* at 16. The ALJ acknowledged that "[t]he claimant reported problems with memory, understanding, following instructions and completing tasks." *Id.* McMahon's husband also testified that he has to constantly repeat directions in order for her to complete "daily tasks and household chores." *Id.* The ALJ further acknowledged that McMahon's educational records revealed an "intervention for learning disorder and ADHD," and recent intelligence testing with an IQ score of 67. *Id.* at 358. She was able to read at a seventh-grade level, and she graduated high school. *Id.* And the ALJ found that "two consultative examinations and current treatment records did not identify a significant impairment with memory." *Id.* at 16. At an examination in March of 2013, her memory, both recent and remote, was adequate. *Id.* She further was able to recall four objects after they were spoken to her, and two out of the same four after five minutes. *Id.* at 17. She could also recall six digits forward and four digits backwards. *Id.* At the second examination in April 2018, McMahon had "intact recent and remote memory." *Id.* Mental status findings also included in the record indicated "normal recent, remote, and present memory," as well as "stable thought, fair attention and concentration, and fair judgment." *Id.* She could also recall three objects immediately and after five minutes, she could recall two objects. *Id.* She further could repeat digits forwards

10

and backwards. *Id.*  The ALJ also considered the fact that when McMahon was undertaking standardized intelligence testing, she was "observed to be relaxed and comfortable, able to recall and understand the instructions, and respond in an appropriate manner and work with reflection." *Id.*  McMahon also said that she could operate a cash register in a grocery store with some problems remembering the categories of food, could follow written instructions, keep things written down to stay organized, use public transit, and pay some bills. *Id.*  Her husband mentioned that she could follow directions on a box when cooking. *Id.*  In sum, the ALJ found that after balancing the objective and clinical evidence and McMahon's level of functioning, it supported no greater than a moderate level of impairment.

The ALJ also determined that McMahon had a moderate limitation in "interacting with others." *Id.* at 17.  The ALJ began by acknowledging that McMahon reported having problems getting along with others, sticking to herself, and freezing up around authority figures. *Id.*  The ALJ noted that despite this, educational records showed that she could maintain herself in high school classes "80% of the time." *Id.* at 291.  At a 2013 medical examination, she was reported to have a "varied affect," and maintained that she had periods of depression and crying and isolating herself. *Id.* at 17.  Despite this, her expressive language was appropriate for the situation, and she could maintain good eye contact and fluid speech. *Id.*  At a 2018 medical examination, she was cooperative and her manner

11

of relating was fair with normal posture, motor behavior, good eye contact and clear and fluid speech. *Id.* McMahon also had a coherent and goal-oriented thought process and fair judgment. *Id.* The ALJ also noted that while McMahon's mental health records revealed issues with anger and frustration, such issues were mainly within family relationships, and he noted that during treatment she was in a neutral or good mood. *Id.* According to the ALJ, McMahon was also able to have worked in a grocery store part time and "interact with coworkers, supervisors, and the public." *Id.* She was also able to use public transportation and take care of her three children, as well as her husband, who has health issues. *Id.* The ALJ decided that after balancing the objective and diagnostic evidence as well as McMahon's level of functioning, the evidence supported no greater than a moderate limitation. *Id.*

The ALJ further determined that McMahon had a moderate limitation regarding her "concentrating, persisting, or maintaining pace." *Id.* McMahon testified that she had problems concentrating, following instructions, and completing tasks. *Id.* She also said that her concentration was "lower," and that she works at a "slower pace." *Id.* McMahon's husband testified that "she gets off track and misses the public bus schedule or is late getting ready." *Id.* The ALJ also noted that the record revealed a history of ADHD dating to a young age, and interventions as well as extra time on school assignments. *Id.* But the ALJ also

12

noted that by her senior year of high school, McMahon could write effectively staying focused on content. *Id.* at 18. At a 2013 medical examination, her attention and concentration were adequate. *Id.* Calculations were difficult for McMahon, but she could count backwards by series of threes. *Id.* At a 2018 medical examination, she had a mild impairment to her concentration, and was unable to divide or to perform serial-7s, but she could do serial-3s and count by 2s. *Id.* The ALJ also noted that she had a coherent and goal-directed thought process and fair judgment. *Id.* Her treatment records note that she had fair concentration and attention. *Id.* Additionally, the ALJ observed that McMahon said she had the ability to follow written instructions and writes things down to stay organized. *Id.* And he noted that her husband also testified that she could follow directions on a box when cooking. *Id.* The ALJ further noted that McMahon reported doing chores and shopping with some difficulties, paying some bills, coloring, and watching television. *Id.* The ALJ decided that after balancing the objective and diagnostic evidence as well as McMahon's level of functioning, the evidence supported no more than a moderate limitation. *Id.*

The ALJ concluded that McMahon also had a moderate limitation in "adapting or managing oneself." *Id.* at 18. He noted that McMahon "did not report problems with her personal care," and that despite one report to the contrary, she was "generally found to be dressed appropriately or casually and neatly groomed."

*Id.* McMahon, however, reported problems with handling stress and changes in routine. *Id.* At the consultative exam in March 2013, McMahon reported that she sometimes gets angry to the point where she throws things and yells. *Id.* And her educational records revealed that McMahon could become easily frustrated, negative, and she struggled with changes in her day. *Id.* But these same records noted that McMahon would respond to redirection. *Id.* McMahon's mental health records also revealed that she struggled with anger and frustration, but again that this was mainly constrained to familial relationships. *Id.* Otherwise, the records show that McMahon was generally in a good mood when participating in therapy sessions. *Id.* At another consultative exam in 2018, McMahon was "cooperative and her manner of relating was fair with normal posture, motor behavior and eye contact and clear and fluid speech." *Id.* She also displayed a coherent and goal-directed thought process and fair judgment. *Id.* Other evidence the ALJ considered was that she was able to perform at standardized testing under stress while remaining "relaxed and comfortable," and that she could "respond to questions in an appropriate manner, work with reflection, have good attention, and showed no signs of significant emotional distress." *Id.* Finally, the ALJ also considered that McMahon could take care of her husband and three children, and she could follow written instructions, use public transit, shop, and work a cash register. *Id.* The ALJ determined that after considering and balancing all the objective and clinical

14

evidence, as well as the McMahon's level of functioning, no greater than a moderate impairment was warranted. *Id.*

Thus, the ALJ concluded that McMahon's "adaptive functioning is not at an extreme level of limitation in one or a marked limitation in two of the areas discussed in the 'paragraph B' criteria above." *Id.* at 20.  McMahon therefore did not meet or equal one of the listed impairments. *Id.*

At step four of the sequential-evaluation process, the ALJ found that McMahon had the RFC to perform a full range of work at all exertional levels but with some non-exertional limitations. *Id.*[7]  He found McMahon to be limited to "unskilled work involving only simple tasks that are not performed in a fast-paced production environment," and "occupations with only occasional, simple, decision-making and occasional changes in the work duties or work setting," with the further limitation that she "can tolerate only occasional interaction with supervisors, coworkers, and the public." *Id.*

---

[7] RFC limitations "can be either exertional or non-exertional." *Morel v. Colvin*, No. 4:16-CV-0476, 2017 WL 1162946, at *2 (M.D. Pa. Mar. 29, 2017). Exertional limitations are defined as limitations in "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(b).  "To determine the physical exertion requirements of work in the national economy, [the ALJ] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567.  Non-exertional limitations include "manipulative or postural functions" like "reaching, handling, stooping, climbing, crawling, or crouching," along with mental impairments and other limitations. 20 C.F.R. § 404.1569a(c).

The ALJ found the state agency mental assessments of Francis Murphy, Ph. D. to be "generally persuasive." *Admin. Tr.* at 25.  Dr. Murphy opined that McMahon had "mild to moderate levels of impairment that did not prevent her from engaging in simple, repetitive activities on a sustained basis." *Id.*  This was the only medical opinion that the ALJ considered to be generally persuasive in his RFC determination, as he found the medical opinions of Drs. Cole and Smock to be "not persuasive" and "only persuasive to an extent," respectively. *See Admin. Tr.* at 23, 24.  The ALJ also considered McMahon's work history, home life, medical history, and history of dealing with others. *Id.* at 20–26.

At step five of the sequential-evaluation process, considering McMahon's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that she could perform. *Id.* at 26.  The vocational expert testified at the hearing that given the above factors, an individual with McMahon's limitations would be able to perform the requirements of representative occupations such as "an inserter (DOT# 920.687-138, with 58,000 jobs in the national economy), a cleaner/polisher (DOT# 709.687-010, with 31,000 jobs in the national economy) and a bench worker (DOT# 715.684-026, with 24,000 jobs in the national economy)." *Id.*

In sum, the ALJ found that McMahon had "not been under a disability, as defined in the Social Security Act, from April 20, 2014, through the date of this decision[.]" *Id.* at 27.

## V. Discussion.

McMahon presents three arguments on appeal. First, she argues that the ALJ's finding that she did not meet the criteria of paragraph B of the Intellectual Disorder impairment listing was not supported by substantial evidence. *Doc. 19* at 6. Second, she argues that the ALJ erred in his RFC determination, and that it was not supported by substantial evidence. *Doc. 19* at 5. Third and finally, McMahon argues that her condition should have been evaluated by a medical expert to further determine whether a listing was met or equaled. *Id.* at 12.

### A. Substantial Evidence Supports the ALJ's Step Three Evaluation.

The appendices to Part 404, Subpart P, of the Social Security Regulations ("the listing of impairments"), describe, for each major body system, the severity of impairment that is considered to be severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.925(a). At step three of the sequential-evaluation process, the ALJ considers whether the combination of the

claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If a claimant has an impairment that meets the twelve-month duration requirement and meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The Listings are a regulatory device used to streamline adjudication of benefits by identifying those claimants whose medical impairments are so severe that they are considered presumptively disabled, making further inquiry into their vocational background unnecessary." *Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 n.6 (3d Cir. 2014).  To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  A claimant whose impairment meets or equals one of the listed impairments is *per se* disabled and thus should be awarded benefits. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112 (3d Cir. 2000).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

18

McMahon argues that the ALJ erred in finding that she did not meet the requirements of listing 12.05. *Doc. 19* at 6.  The requirements of listing 12.05 are satisfied by meeting the conditions listed in either its paragraph A or paragraph B. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, listing 12.05.  In this case, McMahon alleges the ALJ erred by not finding she met the requirements of paragraph B of that listing. *Id.*  At the time of the ALJ's decision, listing 12.05, paragraph B required that three conjunctive elements be met:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
> b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 12.00E1); or
>
> b. Interact with others (see 12.00E2); or
>
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
>
> d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, listing 12.05, paragraph B.

The ALJ found that the requirements of paragraph B were not met because McMahon did not have one extreme area of limitation or two areas of marked limitation. *See Admin. Tr.* at 20.

McMahon alleges that the ALJ provided no analysis of the requirements of listing 12.05(B)(1), even though in her words there is "clearly support in the record to demonstrate" that the requirements are met. *Doc. 19* at 7.  McMahon also alleges that the ALJ "did not evaluate" listing 12.05(B)(3), and she argues that these conditions existed before age 22. *Id.* at 9.  Even assuming *arguendo* that the requirements of both listing 12.05(B)(1) and 12.05(B)(3) were met, there must be "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531.  In other words, the requirements of 12.05(B)(2) must be met regardless of whether the other two requirements are met, and indeed 12.05(B)(2) was at the crux of the ALJ's decision.

McMahon asserts that the ALJ's determination that she does not meet the listing 12.05(B)(2) requirements is not supported by substantial evidence. *Doc. 19* at 6.  More specifically, she offers that the ALJ was in error because he found that

she suffers from the severe impairments of "generalized anxiety disorder, depressive disorder, bipolar 1 disorder, attention deficit, hyperactivity disorder (ADHD), learning disorder and mild intellectual disorder." *Id.*; *see also Admin. Tr.* at 16. But a finding that McMahon had these severe impairments does not equate to finding that she met the criteria of listing 12.05(B)(2).

Moreover, as mentioned above, the ALJ found that McMahon had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in concentrating, persisting, or maintaining pace; a moderate limitation in interacting with others; and a moderate limitation in adapting or managing oneself. *Admin. Tr.* at 16–20. The ALJ made his decision regarding McMahon's level of impairments in all four areas after balancing all of the objective and clinical diagnostic evidence, as well as her own level of functioning. *Id.* This analysis suffices for all four of the criteria of listing 12.05(B)(2).

McMahon further argues that the ALJ erred by failing to ensure that her impairments were evaluated to investigate whether they met or equaled a listing. *Doc. 19* at 13. To the ALJ's credit, he correctly concluded that the record did fairly raise the question of whether McMahon's impairment met or was equivalent to a listing. *Admin. Tr.* at 17–21. Social Security proceedings are inherently inquisitorial, not adversarial, and "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Massey v. Astrue*,

No. CIV. A. 07-426, 2008 WL 4425853, at *2 (W.D. Pa. Sept. 30, 2008) (quoting

*Sims v. Apfel*, 530 U.S. 103, 120 (2000)).  An ALJ has a duty to develop a full and

fair record in social security cases. *See Smith v. Harris*, 644 F.2d 985, 989 (3d

Cir.1981).  Sometimes, the ALJ's duty to develop the record requires the ALJ to

order an additional consultative exam to more fully develop the record.

*Robaczewski v. Colvin*, No. 4:14-CV-01686, 2015 WL 4930115, at *9 (M.D. Pa.

Aug. 18, 2015).  A consultative examination is required when "[a] conflict,

inconsistency, ambiguity or insufficiency in the evidence must be resolved, . . . or

[t]here is an indication of a change in [the claimant's] condition that is likely to

affect [his or her] ability to work, but the current severity of [the] impairment is not

established." *Id.*; *see also* C.F.R. § 404.1519(a)(b)(4)-(5).

McMahon cites with approval *Maniaci v. Apfel*, a case hailing from the

Eastern District of Pennsylvania. *See Maniaci v. Apfel*, 27 F. Supp. 2d 554 (E.D.

Pa. 1998).  There, the court held that:

> The ALJ's failure to determine the extent of plaintiff's
> orthopedic injuries was a failure to fulfill her duty to develop
> the record under 20 C.F.R. § 404.1512(d)–(f).  Thus, the Court
> must vacate the ALJ's decision to deny benefits and remand the
> case for further development of the record.

*Id.* at 559 (internal citations omitted).  In that case, however, the court found that

the ALJ did not receive any testimony from an orthopedist on the extent of

McMahon's orthopedic injuries. *Id.* at 558.  Indeed, the only "medical testimony

22

presented at the administrative hearing was provided by Dr. Rothkopf, a cardiologist, who repeatedly limited his testimony to the plaintiff's heart condition." *Id.* "When asked about plaintiff's orthopedic condition, Dr. Rothkopf gave only a general response without specifically testifying about plaintiff's orthopedic condition." *Id.*

The situation differs in the case presently before us now, when compared to *Maniaci*. In that case, the only medical testimony presented regarding the claimant's orthopedic problems was the report of one cardiologist. *Mariaci*, 27 F. Supp. 2d at 558. In the instant matter, the ALJ allowed into evidence the opinions of Drs. Cole, Smock, and Murphy, thus meeting his duty to develop the record. There is no evidence of a conflict, inconsistency, ambiguity, or insufficiency in the ALJ's evaluation of consistency for Drs. Cole, Smock, and Murphy, and there has been no change in McMahon's condition warranting a further exam. Substantial evidence thus supports the ALJ's Step Three evaluation.

**B. Substantial Evidence Supports the ALJ's finding that McMahon had the RFC to perform unskilled work involving simple tasks not performed in a fast-paced production environment, occasional, simple decision-making, and occasional interpersonal interaction.**

McMahon's next argument is that the ALJ erred in his determination of her RFC. *Doc. 19* at 12. As a rule, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). As mentioned above, a claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n. 1. In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review."). Applying the above standard to the present record, the ALJ's RFC determination is supported by substantial evidence.

In her brief, McMahon argues that even if she does not meet the requirements of a listing, it would be error to find that she can perform "any gainful employment." *Doc. 19* at 12. To support this proposition, she argues that she "suffers unquestionably from with [sic] ADHD, depression, bipolar-2, anxiety,

and intellectual disability and has since she was at least a teenager." *Id.*  Again, though McMahon may have a number of severe impairments, the mere fact of their existence does not mean that the ALJ erred in his RFC determination.

She also argues she is disabled because she has not been successful in "many, many employment attempts." *Id.*  When determining substantial gainful employment, generally "work that you are forced to stop after a short time because of your impairment" is "an unsuccessful work attempt." 20 C.F.R. § 404.1574(a)(1).  Earnings "from an unsuccessful work attempt will not show that you are able to do substantial gainful activity." *Id.*  An unsuccessful work attempt is when "you . . . [stop] working or reduc[e] your work and earnings below the substantial gainful activity earnings level because of your impairment," 20 C.F.R. § 404.1574(c)(2).  Here, the ALJ acknowledged McMahon's alleged difficulties in keeping a job, noting that McMahon "testified that she could not keep up at a packing job or in the deli department at a grocery store job." *Admin. Tr.* at 25.

But the ALJ noted that McMahon "reported that when she was moved to the cash register job, she had some difficulties with remembering the food categories, but left that job due to childcare issues." *Id.*  In sum, McMahon's failed job attempts do not support a conclusion that the ALJ's RFC is not supported by substantial evidence.  The ALJ also considered McMahon's activities of daily living and the other evidence in the record.

**C.  The ALJ did not err in evaluating the opinion evidence.**

McMahon also argues that the ALJ erred in dismissing the medical findings of Drs. Cole and Smock. *Doc. 19* at 7, 9.

### 1.  Overview of the Regulations Regarding Opinion Evidence.

Because McMahon's claim concerns the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims filed on or after March 27, 2017, like McMahon's, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.  Here, McMahon filed her initial claims on January 16, 2018, and December 15, 2017, and so the new regulations govern in this case. *See Admin. Tr.* at 13.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of

26

this hierarchy." *Id*.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather

than assigning weight to medical opinions, the Commissioner will articulate "how

persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b),

416.920c(b).  And the Commissioner's consideration of medical opinions is guided

by the following factors: supportability; consistency; relationship with the claimant

(including the length of the treatment relationship, the frequency of examinations,

the purpose of the treatment relationship, the extent of the treatment relationship,

and the examining relationship); specialization of the medical source; and any

other factors that tend to support or contradict the opinion. 20 C.F.R.

§§ 404.1520c(c), 416.920c(c).  The most important of these factors are the

"supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations

provide that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the

medical opinions or prior administrative medical finding(s) will be." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations

provide that "[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id.*  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).


### 2.  The ALJ's Handling of the Opinion Evidence in this case.

McMahon asserts that the ALJ wrongly dismissed the findings of Andrew Cole, PhD ("Dr. Cole"). *Doc. 19* at 7.  The ALJ found that the opinions of Dr. Cole were "not persuasive." *Admin. Tr.* at 25.  The ALJ stated:

> Dr. Cole opined the claimant would have only a mild limitation with understanding, remembering and carrying out simple instructions and making simple work-related decisions, but that she would have a marked degree of limitation with understanding, remembering and carrying our complex instructions and making simple work-related decisions.  Dr. Cole opined the claimant would have a moderate to marked level of impairment with interacting appropriately with coworkers, supervisors and the public and a marked level of

> impairment responding appropriately to usual work situations
> and to changes in a routine work setting.

*Id.* at 24–25.  The ALJ went on to say that Dr. Cole's opinion that McMahon had a marked limitation was "based more on subjective reports of the claimant during a one-time examination than any objective findings." *Id.* at 24.  He also concluded Dr. Cole's opinion was inconsistent with McMahon's levels of daily activity, "including childcare and chores, which show greater ability to adapt and manage herself." *Id.*  The ALJ also found inconsistency in that McMahon had been able to work in a "public setting as a cashier in a grocery store, which involves significant interaction with coworkers, supervisors, and the public, and thus shows a greater ability to interact appropriately with others." *Id.*  Finally, the ALJ noted that Dr. Cole's conclusions were inconsistent with his own findings, namely that McMahon was cooperative, relaxed, and comfortable during testing, worked deliberately and with good attention, and did not evidence significant emotional distress even under the stimulus of stressful testing conditions. *Id.* at 23–24.  Because the ALJ clearly articulated what he found to be persuasive about Dr. Cole's opinion and how it was consistent with the record as a whole as well as the opinion's internal consistency, the ALJ's findings are supported by substantial evidence.

McMahon also alleges that the ALJ erred in finding that the opinions of David Smock, PhD. ("Dr. Smock") were persuasive "only to an extent." *Doc. 19* at 9.  McMahon had previously gone to Dr. Smock as part of a prior application for

Social Security benefits. *Admin. Tr.* at 23.  The ALJ found that the opinions of Dr.

Smock were "persuasive only to an extent." *Id.* at 23–24.  In his disability

evaluation of McMahon on March 21, 2013, Dr. Smock noted that she "would

have some mild to moderate attention problems." *Id.* at 312.  Additionally, Dr.

Smock noted that she "would have some moderate difficulty following or

understanding directions [and] in making appropriate decision[s] in a job setting."

*Id.*  Dr. Smock further opined that:

> [McMahon] would have difficulty dealing with the stress
> at the workplace, so she probably would become overwhelmed
> cognitively, fairly quickly.  She would have some difficulty
> doing simple task[s] independently and would be likely
> overwhelmed by complex tasks. She would have problems
> learning new tasks. She would have some difficulty relating
> effectively to peers, supervisors and customers because of her
> limited cognitive ability.

*Id.*  McMahon asserts that the fact that the ALJ's decision "dismisses this aspect of

the report is a further indication the decision is not supported by substantial

evidence." *Doc. 19* at 10.  Regarding Dr. Smock's opinions, the ALJ found that the

determination of a mild to moderate level of impairment regarding attention was

persuasive because it was "well supported by his clinical findings and results done

during the investigation." *Id.* at 22.  Other than the findings regarding attention,

however, Dr. Smock's opinion was not persuasive as a whole. *Id.* at 23.  Indeed,

the ALJ also found that Dr. Smock did not "quantify many of the areas he

identified." *Id.* at 22–23.  Because the ALJ articulated what he found to be

persuasive about Dr. Smock's opinion and how it was consistent with clinical

findings and investigative results as well as the record as a whole, the ALJ's

findings are supported by substantial evidence.

As mentioned above, the ALJ also considered the state agency medical

assessments of Francis Murphy, PhD. ("Dr. Murphy"). *Id.* at 25.  The assessments

found that McMahon had mild to moderate levels of impairment that did not

prevent her from engaging in simple and repetitive activities on a sustained basis.

*Id.*  The ALJ found this opinion persuasive because it was supported by

explanations of evidence available at the time of the opinions. *Id.*  Dr. Murphy's

opinion was supported by and consistent with objective clinical findings from

treatment records and consultative exam findings, including intellectual testing and

educational records. *Id.*  The ALJ also observed that the clinical medical records

consistent with Dr. Murphy's assessments were mainly conservative with no

significant abnormal clinical findings regarding mental status. *Id.*  Because the ALJ

clearly articulated the bases for his findings of consistency, his findings are

supported by substantial evidence.

## VI.    Conclusion.

For the foregoing reasons, we will affirm the Commissioner's decision and deny McMahon's appeal for social security benefits.  An appropriate order follows.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge